FRANCIS C. WELCH, trustee, *vs.* WALTER AUSTIN & others.

Suffolk. November, 16, 1904. — January 6, 1905.

Present : KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Equitable Restriction.*

A grantor, owning adjoining land with a house on it, conveyed a lot on the corner of Arlington Street and Marlborough Street in Boston, by a deed containing the following provision : " The premises are however conveyed subject to the following restrictions and agreements : The dwelling house to be built on the granted premises shall be set back five feet from the line of Arlington Street, and shall not exceed sixty-five feet in depth from said street so as to correspond in this particular with my adjoining house. The front elevation and the material used in the construction of the front on Arlington Street shall correspond with my house adjoining according to the plan of G. J. F. Bryant herewith to be recorded, including a projection of about one foot on the front line as indicated on said plan. Two or three windows may be inserted in the front elevation from the second floor up, and one or two in the basement floor as may be preferred by the grantee or his representatives. The front on Marlborough Street shall be of freestone, and shall correspond as nearly as may be with the front on Arlington Street." *Held,* that the provision was more than a personal covenant and created a restriction for the benefit of the adjoining land of the grantor, but that this restriction was confined to the house about to be built when the deed was given and continued only so long as that house existed.

*Semble,* that on a petition under R. L. c. 182, § 11, to determine the validity, nature and extent of a restriction appearing of record to have been imposed on the petitioner's land more than thirty years before the filing of the petition, the question whether changed circumstances have made the enforcement of the restriction inequitable cannot be raised.

PETITION, filed February 16, 1904, under R. L. c. 182, § 11, by the owner of a lot of land numbered 8 on Arlington Street in Boston, to determine the validity, nature and extent of certain restrictions or stipulations appearing of record to have been imposed on the petitioner's land by a deed from Oliver Brewster to John Foster dated March 11, 1863.

In the Superior Court the case was heard by *Richardson,* J. upon an agreed statement of facts. The provision in question was as follows :

" The premises are however conveyed subject to the following restrictions and agreements :

" The dwelling house to be built on the granted premises shall be set back five feet from the line of Arlington Street, and

shall not exceed sixty-five feet in depth from said street so as to correspond in this particular with my adjoining house. The front elevation and the material used in the construction of the front on Arlington Street shall correspond with my house adjoining according to the plan of G. J. F. Bryant herewith to be recorded, including a projection of about one foot on the front line as indicated on said plan. Two or three windows may be inserted in the front elevation from the second floor up, and one or two in the basement floor as may be preferred by the grantee or his representatives. The front on Marlborough Street shall be of freestone, and shall correspond as nearly as may be with the front on Arlington Street."

The judge found that the alleged restrictions were valid and were imposed for the benefit of the adjoining house and land of Oliver Brewster referred to in the deed from him to John Foster, and that a right or interest was created thereby in the nature of an easement in the granted premises which became appurtenant to the adjoining house and land; that the restrictions were intended to apply to all buildings which might at any time be erected on the granted premises, and bound the original grantee and his successors in title to observe and comply with the restrictions in erecting, rebuilding, repairing or altering in any manner any building upon the granted premises; that the right to the enforcement of the restrictions, as against the original grantee and his successors in title claiming under him with notice of the restrictions, was of such a nature that it would pass as annexed to the adjoining house and land to Brewster's successors in title.

The judge ordered a decree to be entered in accordance with these rulings, and, at the request of the parties, reported the case for determination by this court. If the decree was warranted upon the agreed statement of facts it was to be entered; otherwise, such modification was to be made therein or such other order was to be made as law and justice might require.

*B. D. Barker*, for the petitioner.

*H. M. Davis*, for the respondents.

LORING, J. The only question before the court is the nature and extent of the possible restriction, stipulation or agreement created by the deed of Oliver Brewster to John Foster, dated

March 11, 1863, recorded with Suffolk Deeds, libro 825, folio 151.

We cannot accede to the petitioner's contention that the agreement in question is nothing more than a personal covenant on the part of John Foster. The case of *Clapp* v. *Wilder*, 176 Mass. 332, on which the petitioner has largely relied in support of that contention, went on the ground that the thing provided for there was put in the form of a common law condition; and although a stipulation put in the form of a common law condition may operate not only as a condition but as an equitable restriction as well, *Hopkins* v. *Smith*, 162 Mass. 444, there was not enough in that case to show that the common law condition there in question operated also as an equitable restriction.

The petitioner has relied also on the case of *Badger* v. *Boardman*, 16 Gray, 559. That case must be taken to rest on special circumstances. It was heard on the merits, and it is stated in the report that Downing, the grantor in the deed containing the "restriction" which the plaintiff sought to enforce, was "the owner of all these parcels of land, which were described on a plan thereof, dated the 12th of December 1843, and recorded in the registry of deeds." It must be assumed that that plan was before the court, although it is not set forth or otherwise described in the report. On an examination of it in the registry of deeds, it appears that the question then before the court was not the case of an owner of two lots selling one of them, as in the case at bar, but a more complicated situation. The grantor in that case owned seven lots on the westerly corner of Bowdoin and Cambridge Streets in the city of Boston. Five of the seven lots faced on Bowdoin Street and two on Cambridge Street. The lot conveyed to the defendant was lot No. 3; the lot which eventually came to the plaintiff was lot No. 4, next north of No. 3; and it was conveyed by the original grantor after lot 3 was conveyed. The lot on the corner was lot No. 5. All these lots faced on Bowdoin Street. Lots 6 and 7, facing on Cambridge Street, ran back across the rear end of lots 5, 4 and 3, to the southerly line of lot 3. There was nothing to indicate that the "restriction" in question forbidding any buildings or shed ever being erected westerly of the main building [on lot 3] "of a greater height than those now standing thereon" was for the

benefit of lot 4 rather than of lots 6 and 7. In this situation the court seems to have cut the knot by holding that it was a personal covenant.

*Skinner* v. *Shepard*, 130 Mass. 180, the other case principally relied on by the petitioner, is a case where an action was brought for breach of a covenant of warranty in a deed from the defendant to the plaintiff. The breach relied on was that in a deed under which both claimed title there was a provision that no building should ever be placed within twenty-five feet of Green Street, on which the premises faced. The only fact in connection with this deed put in evidence by the plaintiff as showing that this provision constituted an equitable restriction and not a personal covenant was that the grantor, at the date of the deed in question, owned a parcel of land on the other side of a railroad which bounded the granted premises on the west. The granted premises were a tract containing over sixty-five thousand square feet of land, and the provision in question was coupled with a provision that the occupant of a part of the premises next the railroad, used for a lumber yard, should have six months in which to remove his lumber. The two provisions were not only coupled together, but were part of the same sentence. Under the rule previously laid down in *Episcopal City Mission* v. *Appleton*, 117 Mass. 326, 329, each part of this provision must receive the same construction. It is plain that the latter part of the provision requiring the lumber to be removed within six months was not an equitable restriction. On these facts it was held that the plaintiff had not made out that the provision in question was anything more than a personal covenant.

In the case at bar the things provided for are stated to be " restrictions and agreements " subject to which the land was conveyed. From the nature of the provisions, namely, a set back from the street in front, a limit to the depth of the house on the back and a specified façade which was to make the house to be built on the lot conveyed one building with the house already built on the land of the grantor and the two houses next south of it, are in their nature matters which would benefit the adjoining land of the grantor; and, as if to put beyond a doubt the question of this restriction having been imposed for the benefit of the only lot remaining owned by the grantor, it

is stated in the deed that the restrictions are imposed so that the house to be built on the lot conveyed shall correspond with the adjoining house of the grantor. We are of opinion that these provisions must be taken to have been inserted for the benefit of the adjoining land of the grantor, and constituted agreements which will be enforced as equitable restrictions. *Peck* v. *Conway*, 119 Mass. 546.

But we are of opinion that the petitioner is correct in his contention that the duration of the restriction in the case at bar was limited to the life of the first house erected on the granted premises.

This case is governed by *American Unitarian Association* v. *Minot*, 185 Mass. 589. Indeed there is a reason here for holding the restriction to be thus limited in its duration which we did not have in that case. That is the provision that : " The front elevation and the material used in the construction of the front on Arlington Street shall correspond with my house adjoining according to the plan of G. J. F. Bryant herewith to be recorded, including a projection of about one foot on the front line as indicated on said plan. Two or three windows may be inserted in the front elevation from the second floor up, and one or two in the basement floor as may be preferred by the grantee or his representatives. The front on Marlborough Street shall be of freestone, and shall correspond as nearly as may be with the front on Arlington Street, or however otherwise said premises may be bounded, measured or described." The plan referred to is a plan of three houses ; the house here in question on the corner, Brewster's house and the house next beyond on the south. The façade shown is a façade of what is, together with the house on the grantor's lot, the house next to it and the other corner house (which is not drawn out but is indicated on the drawing), one building. It hardly could have been the intention to restrict in this minute way in perpetuity the buildings to be erected on this lot of land.

The respondents contend that this case is not governed by *American Unitarian Association* v. *Minot*, because in that case five of the six houses there in question had been torn down and buildings erected in their place which were not dwelling houses, and that while the sixth still stood, it had been converted into a

hotel. In the case at bar on the contrary, the house owned by Brewster at the date of the deed to Foster here in question is still used as a dwelling house. Had the decision in *American Unitarian Association* v. *Minot* gone on the ground that by reason of a change in circumstances within *Jackson* v. *Stevenson*, 156 Mass. 496, a perpetual restriction would not be enforced in equity, these facts might make a difference. But not only did that case not go on that ground, but it is expressly stated in the opinion that it was not necessary to express an opinion on the question whether the doctrine of *Jackson* v. *Stevenson* could be raised in a petition at law under the statute to ascertain the limits of a restriction. It seems plain that no such consideration can be gone into in such a petition. See *Crocker* v. *Cotting*, 181 Mass. 146, 153. More than that, where a restriction which is limited in its duration has come to an end, no question of the application of the doctrine of *Jackson* v. *Stevenson* can arise. That doctrine can cut down in effect the duration of an equitable restriction, but it cannot prolong a restriction which in terms is limited in a particular way. The same is true of the respondents' contention here that so long as their house is used for a dwelling house the restriction on the petitioner's land is to continue in existence. The parties to the deed in question could have provided that the restrictions should apply to any building erected on the land conveyed so long as the dwelling house then erected on the grantor's land should stand unchanged. But they did not do so. What they did provide was that " the dwelling house to be built on the granted premises " should be built in the way provided, so as to correspond with the grantor's " adjoining house." This might terminate the duration of the restriction but cannot prolong it. For example, if Brewster had torn down the dwelling house then standing on his lot before a dwelling house was built on the granted premises, the restriction might perhaps have been thereby brought to an end. But by the terms of the provision adopted by the parties the duration of the restriction was measured by the life of " the dwelling house to be built on the granted premises." We are of opinion that the restriction created by this deed expires when the dwelling house now on the petitioner's lot is torn down.

The decree entered by the Superior Court must be modified accordingly.                                    *So ordered.*