ROBERT A. BRODEUR & another[1] *vs.* JOHN W. LAMB & others.[2]

Plymouth.    March 11, 1986. — July 15, 1986.

Present: GRANT, PERRETTA, & SMITH, JJ.

*Easement.*

In an action seeking a declaration that the plaintiffs, owners and operators of a cranberry bog, had a right of way by grant over the defendants' land, the judge erred in ruling that the plaintiffs must cease their use of the right of way during hours of darkness and that use must be limited to the plaintiffs and their employees, where the express terms of the instrument creating the right of way placed no such limitations on its scope. [504-505]

Where, in an action seeking a declaration that the plaintiffs had a right of way by grant over the defendants' land, there was evidence that the defendants had interfered with and obstructed the right of way, the judge should have granted the plaintiffs' request for a permanent injunction ordering the defendants to cease doing so. [505]

CIVIL ACTION commenced in the Land Court Department on April 25, 1984.

The case was heard by *William I. Randall,* J.

*Peter J. Macdonald* for the plaintiffs.

*John G. Keefe* for the defendants.

SMITH, J. On April 25, 1984, the plaintiffs, Robert and Barbara Brodeur, owners and operators of a cranberry bog in Plymouth, filed a complaint in the Land Court seeking a declaration that they have a right of way by grant over land owned and occupied by the defendants. They also sought a permanent injunction to enjoin the defendants from obstructing the right of way.

---

[1] Barbara J. Brodeur.

[2] Kathleen A. Lamb, Joseph W. Smith, Judith A. Smith, Margaret J. Krusas, Ronald G. Finlayson and Mary T. Finlayson.

A trial was held in the Land Court. We summarize the facts found by the judge. The plaintiffs are the owner-operators of a cranberry bog in Plymouth. The defendants are individual owners of some single family houses located in a development known as "Candlewood at Clear Pond." The development is near the bog. The land owned by the plaintiffs and defendants — the bog and the residential area — was formerly owned by one Harold Bumpus, himself a cranberry grower. For many years, Bumpus farmed the bog that the plaintiffs now own and operate.

On September 11, 1959, Bumpus sold that portion of his property containing the 18½ acre cranberry bog to Herbert F. and Lois M. Pierce. At the same time, Bumpus granted to the Pierces an easement over the remainder of his land. The grant conveyed to the Pierces, "[their] grantees, their heirs, agents, servants, and assigns, a right to pass and repass on foot or in vehicles to and from the way known as Valley Path Road as presently used for the bog operation, and on and over the said Valley Path Road to and from the highway between Plymouth and Carver known as Route 44 . . .." After acquiring the property, the Pierces operated the bog from 1959 until April 3, 1980. On that date they conveyed the bog and the easement over the nearby property to the plaintiffs. Since 1980, the plaintiffs have farmed the cranberry bog.

On February 14, 1961, almost one and one-half years after he sold the bog to the Pierces, Bumpus conveyed the rest of his land to Ovila F. and Jeanette E. Parker. The property conveyed was subject to the easement over the land granted to the Pierces by Bumpus. In 1967, the Parkers subdivided the land in accordance with a plan known as the "Candlewood Plan." That plan clearly showed two dotted lines crossing various lots in the subdivision, delineating a way. The Parkers proceeded to develop the land for residential purposes, the development becoming known as "Candlewood at Clear Pond." Each of the defendants purchased a residential lot from the Parkers' grantees. Their deeds expressly referred to the "Candlewood Plan" which delineated the way. The deeds also recited that they were "subject to and with the benefit of ease-

ments, restrictions and encumbrances of record." The plaintiffs' easement is over a portion of each defendant's property. During the past few years tensions between the plaintiffs and the defendants have increased over the use of the easement by the plaintiffs and their employees. In 1984 the defendants obstructed the easement by installing fences and gates. As a result, the plaintiffs brought this petition.

The judge concluded that the plaintiffs had established the existence of an express right of way by grant over the land of the defendants. He ruled, however, that use of the easement during the hours of darkness would overburden the easement, and, therefore, must cease. He also ruled that the easement could only be used by the plaintiffs and their employees. Finally, the judge refused to issue an injunction enjoining the defendants from obstructing the easement. Judgment was entered in accordance with the judge's rulings, and the plaintiffs have appealed.[3]

The plaintiffs' easement is by grant and is not limited in scope by its terms. Such an easement is available to the plaintiff "for every reasonable use to which the dominant estate may be devoted, and this use may vary from time to time with what is necessary to constitute full enjoyment of the [plaintiffs'] premises." *Mahon* v. *Tully,* 245 Mass. 571, 577 (1923). See also *Parsons* v. *New York, New Haven, & Hartford R.R.,* 216 Mass. 269, 273 (1913); *Tehan* v. *Security Natl. Bank,* 340 Mass. 176, 182 (1959). The plaintiffs contend that the judge's restriction would jeopardize their ability to monitor temperatures during the crucial nighttime periods of the frost season. In this regard, there was evidence that a frost can kill a cranberry crop unless precautions such as constant temperature monitoring and timely watering of the bog are undertaken. Thus, it is apparent that nighttime access to the bog is reasonably necessary to proper cranberry farming. Further, there is nothing in

---

[3] The plaintiffs contend that the judge "also appeared to limit the plaintiffs' use of the way to uses in conjunction with a cranberry bog." There is nothing in the judge's memorandum or in the judgment that so restricts the use of the easement. It does not appear that any such question was raised below, and we shall not pass on the question now.

the record that demonstrates that nighttime use of the easement has been or would be "so substantial as to be unreasonable or to amount to a nuisance." *Hodgkins* v. *Bianchini,* 323 Mass. 169, 173 (1948). *Michaelson* v. *Nemetz,* 4 Mass. App. Ct. 806, 807 (1976).[4] Therefore, the judge's ruling limiting use of the easement during the hours of darkness constitutes error.

The judge's ruling that the use of the easement is limited to the plaintiffs and their employees is also error. The grant to the plaintiffs specifically states that it is "to the herein grantees, their heirs, agents, servants, and assigns." The language is unambiguous and it is plain that the grant includes others than just the plaintiffs and their employees. In these circumstances and on this record, the judge did not have the authority to limit the use of the easement only to the plaintiffs and their employees.

We are also of the opinion that the judge should have granted the plaintiffs a permanent injunction ordering the defendants to cease obstructing the easement. "An interference with an easement holder's use of the land amounts to an infringment of a valuable property interest." *Texon, Inc.* v. *Holyoke Mach. Co.,* 8 Mass. App. Ct. 363, 366 (1979). Here, there was ample evidence that the defendants had obstructed the easement. The fact that the expense to the defendants in removing the obstruction would be burdensome is not enough to forestall an injunction.

The judgment shall be modified to remove the limitations on the use of the easement during the hours of darkness and against use by persons other than the plaintiffs and their employees. In addition, judgment shall issue requiring the defendants to remove the fence posts and gates and also enjoining the defendants from interfering with or obstructing the plaintiffs' use of the easement. As so modified, the judgment is affirmed.

*So ordered.*

---

[4] The evidence as to the nighttime use of the easement is sketchy, perhaps because such use of the easement apparently was not made an issue at trial.